# IN THE COURT OF APPEALS OF IOWA

No. 23-1831
Filed January 10, 2024

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**J.R., Mother,**
 Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kristin L. Denniger, Mount Vernon, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child.[1] Because clear and convincing evidence supports a statutory ground for termination, additional time was not warranted, termination is in the best interests of the child, and no exception applies, we affirm.

## I.     *Background Facts and Proceedings*

The child was born in February 2023, testing positive for cannabinoids and THC.  At the time, the mother was participating in a child-in-need-of-assistance case with the Iowa Department of Health and Human Services involving an older child due to concerns about domestic violence, substance abuse, mental health, and lack of housing.[2]  The mother "largely had failed to follow through with the case plan expectations of [the older child's] case."[3]  The child was removed from the mother's custody, placed in family foster care, and the mother stipulated to the child's adjudication as in need of assistance.

The court entered a dispositional order in April, finding in part "that continuation of the child in the parental home would be contrary to the welfare of the child because the mother has substance abuse issues and mental health issues that have gone unaddressed despite services being provided for over a year in her older children's cases."  The department reported the mother failed to regularly attend visits with the child or engage in services.

---

[1] The father's parental rights were also terminated; he does not appeal.

[2] The mother denied being pregnant "until less than three weeks prior to delivery" of J.R.

[3] The mother's parental rights to that child were terminated in May 2023.

The State initiated termination-of-parental-rights proceedings in late July. The termination hearing took place in October. The mother did not appear. The caseworker testified about the services provided to the mother and her lack of consistent participation and progress. Except for the mother obtaining housing, the same concerns remained that existed at the time of the child's birth. Significantly, the mother had tested positive for methamphetamine less than one month prior, despite the mother denying "all substance use" or "being around anyone that is using." And the guardian ad litem voiced concerns about the mother's bond with the child, noting the child was "often upset and crying when with [the mother]," which was "starkly different than how she is observed in all other environments." The department and guardian ad litem opined termination of the mother's parental rights would be in the child's best interests.

The court thereafter entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h) (2023). The court noted the mother had failed to make progress toward reunification. Specifically, the court observed the mother had "received services without any gap for over 1.5 years," which included the services offered for her older child to whom her parental rights had been terminated. The court found the mother had "not meaningfully engaged in these [services] to sufficiently address the concerns which brought her to the attention of [the department] in April 2022. The same concerns of substance abuse, domestic violence, inconsistent employment, mental health, are present at the time of trial as much as there were in April 2022." The mother appeals.

## II.    Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).   Our paramount concern in termination proceedings is the best interests of the child.   *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).   We give weight to, but are not bound by, the juvenile court's fact findings.   *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III.    Analysis

*A.    Grounds for Termination.*   The mother's rights were terminated on multiple grounds; we may affirm if any one of the grounds is supported by the record.   *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").   We focus on paragraph (h).   Regarding this paragraph, the mother only challenges the fourth element—whether the child could be returned to her custody.   *See* Iowa Code § 232.116(1)(h)(4).   This element is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing*.   In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).   The mother "recognizes that she continues to have work to do" and "acknowledges that there might need to be continued services to monitor her progress and ensure she did not fall back into old patterns, but argues that this does not equate to an inability to care for her child."

Upon our review, we find the record belies the mother's claims.   At the termination hearing, the department voiced concerns about the mother's continued substance abuse.   The caseworker reported the mother was ordered to participate

in drug testing "[f]our times a month," and she did not complete "approximately eleven" tests. Of the tests completed, she tested positive for THC twice in March, and she tested positive for methamphetamine in July and September. The mother also missed three tests in June and removed a patch placed in June. Despite her positive tests and the fact the child tested positive at birth, the mother denied "all substance use" and maintained she had not used "since August of 2022." She also denied "being around anyone that is using." The caseworker was "concern[ed] that the mother is not being honest" when she denied substance use, which had also resulted in her substance-abuse evaluations recommending no treatment.

The mother was also "not honest about her relationship" with the father, and she reported domestic violence in their relationship. The mother obtained housing shortly after the child's birth. The caseworker expressed concerns about the mother becoming "flustered" during visits. The mother had recently attended visits more frequently, but "[s]he missed out on a lot of bonding time with [the child] during those first four months that she was not having visits very often." Although "[s]ome" of the missed visits were excused, the caseworker opined the mother "did not take advantage of the visits offered" to her, having attended fifteen out of thirty-six visits.

In sum, the mother had "not shown any stability in working the case plan until [the department] requested that termination be filed for [the child]." For example, the mother had recently begun participating more frequently in mental-health treatment, including group therapy. But the caseworker testified, "She had—from March—really before March, through June that she could have been in

individual counseling. She could have been attending a lot of mental health groups, but she wasn't. She didn't start doing that until we requested termination be filed."

Based on these and the other facts detailed above, we concur with the court's assessment the child could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

*B. Additional Time.* Although the mother raises this issue in her material facts rather than an argument section, we choose to address it separately. She requests "additional time and services to achieve safe case closure." "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (quoting *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016)).

The caseworker testified the mother was "trying" and had made some minimal progress. As noted above, the caseworker acknowledged the mother had started attending more visits and more mental-health treatment around the time the termination petition was filed. But the caseworker did not believe additional time or services would facilitate the mother's reunification with the child, because the mother "would not capitalize on it, [and] she would fall back into her old ways." As the caseworker testified:

> [The mother] has had the exact same expectations since April of 2022. Nothing has changed. It's all the same and she knows exactly what she needs to do. Every month that we have met she has been able to tell me what she is supposed to be doing. But there has always been excuses why. . . . She chose when to start following

the case plan expectations and she chose to do that around the same time that we recommended termination. She chose not to have those visits and not to confirm the visits and she chose to tell [caseworkers] that she only wanted an hour long visit when she could have had two. There were times that she would cancel visits because she had other obligations. Her infant daughter should be her obligation.

Under these circumstances, we agree the child should not wait any longer for permanency on a mere hope of the mother's improvement. Additional time was not warranted.

*C. Best Interests of the Child and Permissive Exceptions.* Pursuant to Iowa Code section 232.116(2), termination of parental rights must be in the best interests of the child. Additionally, Iowa Code section 232.116(3) provides that the court "need not terminate the relationship," on a finding of certain factors, including: "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

The mother blends together the best-interests-of-the-child and exception issues by claiming termination is not in the best interests of the child because of the strong bond between her and the child. We address the mother's argument as a challenge to both the best-interests finding and the court's refusal to preserve the parental relationship with the permissive exception provided in Iowa Code section 232.116(3)(c).

First, we determine that termination is in the best interests of the child. When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.*

§ 232.116(2). At the time of termination, the guardian ad litem "continue[d] to be concerned regarding [the mother]'s honesty, parenting skills, and ability to maintain a stable home for herself and [the child]. She has not shown a willingness to change, and she is often hostile toward the providers involved in this case when they try to help her." The mother's lack of engagement and progress during this proceeding leaves room for only one reasonable conclusion—the child's best opportunity to achieve permanency and stability is through termination of the mother's parental rights. *See A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)). Upon our review, we conclude termination is in the child's best interests.

As to the permissive exception, we note both the caseworker and guardian ad litem opined the mother's bond with the child was "not strong" and expressed "concerns about her parenting," for which "issues persist." Specifically, the caseworker believed the mother's missing "over 50 percent of visits has caused damage to her relationship with [the child]." In contrast, since her removal, the child had been placed with a foster family with which the mother's older child was also placed. The caseworker opined the siblings "are very bonded" and stated the family was a pre-adoptive placement. These factors weigh against finding that the parent-child relationship precludes termination. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) ("[The child] was just over a year old at the time of trial, and the record indicates she also has a close bond to her maternal grandparents, with whom she has spent much more time."); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("Over the course of [the child's] young life, [the mother] has only had closely

supervised visits with him.").  Under these facts and circumstances, we affirm the court's decision not to apply this permissive exception.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**